UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Joshua M. Panjaitan

v.

Civil No. 26-cv-940-LM-AJ
Opinion No. 2026 DNH 167 P

U.S. Department of Homeland Security, Secretary, et al.

**O R D E R**

Joshua M. Panjaitan petitions for a writ of habeas corpus under 28 U.S.C. § 2241 seeking a constitutionally adequate bond hearing. Panjaitan was given a bond hearing, at which the immigration judge (IJ) denied bond. The question now before the court is whether the IJ that conducted Panjaitan's custody redetermination hearing under 8 U.S.C. § 1226(a) failed to apply the constitutionally mandated standard of proof. See Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). Respondents object on the grounds that, pursuant to the party presentation principle, the court cannot yet decide this issue. The court finds that the issue is properly presented for review and that the IJ violated Panjaitan's due process rights in finding by a preponderance of the evidence that he posed a flight risk that could not be ameliorated by any combination of release conditions. Therefore, Panjaitan's petition (doc. no. 2) is granted and the court orders him released.

**STANDARD OF REVIEW**

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2241(c)(3). The petition "may be resolved on the merits without [an evidentiary] hearing when, as here, the material facts are not in dispute." Cummings v. Fed. Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar. 25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND

I. Factual Background[1]

Panjaitan is an Indonesian citizen. He lawfully entered the United States in January of 2025 on a B-2 Visa. After entering the United States, Panjaitan began living in New Hampshire. His uncle and mother live nearby. Panjaitan has a Form I-589 asylum application pending before the United States Customs and Immigration Services, as well as a Federal Employment Authorization Document (EAD card) which allows him to legally work in the United States. Since living in New Hampshire, Panjaitan has found work, made friends, and become an active member of a local church.

On August 23, 206, Panjaitan was arrested by the Dover Police Department. According to a police report authored in connection with this arrest, an officer noticed a white sedan with a "black over white temporary vanity registration tag that appeared unreadable." Doc. no. 12-1 at 28. The officer began to follow the sedan. Shortly thereafter, the office noticed that the sedan's driving was erratic; it

[1] The following facts are drawn from materials available to the IJ at the time of the bond hearing. They are recited in the light most favorable to the IJ's decision. Acero v. FCI Berlin, Acting Warden, 825 F. Supp. 3d 52, 55 n.1 (D.N.H. 2026).

drove onto the double yellow barrier line and then the solid white barrier line numerous times. The officer turned on his emergency signals and pulled the sedan over.

The driver was identified as Panjaitan. Upon speaking with Panjaitan, the officer noticed an odor of alcohol coming from his breath and that his eyes were bloodshot and appeared glossy. The officer asked if Panjaitan had been drinking that evening; Panjaitan replied that he had consumed two whiskey sodas four hours earlier. Based on this information, the officer asked Panjaitan to conduct three field sobriety tests. Panjaitan agreed. After conducting the tests, the officer concluded that Panjaitan was impaired and placed him under arrest. Panjaitan was compliant throughout the traffic stop and "was booked without incident." Doc. no. 12-1 at 31. Panjaitan was charged with driving under the influence (DUI). After being given a court date, he was released on personal recognizance. A prosecuting attorney with the Dover Police Department later sent Panjaitan a letter indicating that, based on Panjaitan's lack of criminal record and the facts of the case, she was offering the minimum mandatory penalty under the DUI charge.

During the booking, Panjaitan's fingerprints were taken and queried for comparison to existing immigration records. Immigrations and Customs Enforcement (ICE) learned from that query that Panjaitan had overstayed his B-2 visa, which had expired on November 6, 2025. An I-200 Warrant for Arrest of an Alien was issued.

On the morning of September 21, 2026, Panjaitan went to the Dover District Court for his 8:30 A.M. hearing on the DUI charge. However, his case was not heard during the morning session. So Panjaitan left the courthouse for lunch, intending to return after the recess for his scheduled court appearance. ICE officers waiting for Panjaitan at the courthouse detained him when he exited the courthouse. Panjaitan was compliant during the arrest and his detention was processed without incident. As a result of his detention, his DUI remains unresolved.

II. Procedural Background

The instant habeas action commenced on November 4, 2026. Panjaitan challenged the constitutionality of his detention, citing to the First Circuit's decision in Hernandez-Lara, 10 F.4th at 28. The petition requested, inter alia, "a ruling that petitioner is entitled to a bond hearing, and [an] order [that] such a hearing take place." Doc. no. 2 at 4. The respondent's noted in their response to the order directing service (doc. no. 8) that Panjaitan was eligible for a bond hearing under 8 U.S.C. § 1226(a) but had yet to request such a hearing.

The court held a status conference on November 10, 2026. The court learned, based on counsel's representations during that hearing, that Panjaitan had at some point requested a bond hearing and that one was scheduled for November 18, 2026. After that hearing, the court ordered respondents to file a status report within twenty-four hours of the IJ's order on bond.

On November 20, 2026, respondents filed a status report (doc. no. 10) noting that a bond hearing was held in front of an IJ on November 18, 2026, and that the

IJ denied bond on a finding that Panjaitan posed a risk of flight. The status report included the IJ's written bond order dated November 18, 2026. The IJ's order denying bond stated, in full:

> The Court has considered the relevant factors identified in Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006), and the totality of the evidence in the record. Consistent with Hernandez-Lara v. Lyons, 10 F.4th 19, 39 (1st Cir. 2021), the Court finds that the Department of Homeland Security (DHS) has not established, by clear and convincing evidence, that the Respondent presents a danger to the community.
>
> However, DHS has established, by a preponderance of the evidence, that the Respondent presents a significant risk of flight. Considering the factors and specific evidence discussed on the record, individually and cumulatively, the Court finds that no amount of bond or alternative condition of release would reasonably assure the Respondent's appearance at future proceedings, and that continued detention without bond is warranted.

Doc. no. 10-1 at 1.

The court subsequently issued an order on November 20, 2026, directing respondents to file the record available to the IJ at the bond hearing as well as the audio recording of the bond hearing with the court. That order also directed respondents "to show cause why this court should not release the petitioner on the basis that the evidence before the IJ was insufficient as a matter of law to conclude that petitioner is a flight risk. See, e.g., Mayancela Mayancela v. FCI Berlin, Warden, Civ. No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4-5 (D.N.H. Nov. 18, 2025)."

Respondents filed the requested evidentiary record and audio recording on November 23, 2026. From that record, the court learned that the IJ had before him

at the bond hearing evidence of Panjaitan's continuous residence in New Hampshire, his familial and community ties to the same, his work history, letters of support from coworkers, community members, and friends, and records of his immigration history. The IJ also had the aforementioned evidence of Panjaitan's arrest and DUI charge. After hearing argument from the parties, the IJ issued an oral order denying bond based on flight risk.[2]

The IJ's oral order explained that respondents had proven by a preponderance of the evidence that Panjaitan's release posed a risk of flight that no amount of bond or conditions of release could sufficiently ameliorate. Though he credited Panjaitan's fixed address, length of residence, ties to the community, and familial ties as facts favoring bond, the IJ found that those considerations were outweighed by what the IJ described as Panjaitan's clear disregard for the immigration and criminal laws. In support of that determination, the IJ cited Panjaitan's conduct that led to the DUI charge and his speculative chance of relief from removal.

**DISCUSSION**

The court begins by determining if it may consider whether Panjaitan's detention is unlawful, or whether consideration of that issue is premature at this time and barred (as respondents maintain) by the party presentation principle. Satisfied that this issue is properly presented, the court proceeds to analyze

---

[2] The IJ's oral order, like the written order, stated that respondents failed to satisfy their burden with respect to dangerousness.

whether the IJ who conducted Panjaitan's bond hearing failed to apply the constitutionally mandated standard for such hearings

## I. The Constitutional Adequacy of Panjaitan's Bond Hearing is Properly Before the Court

In response to the court's November 20, 2026 order, respondents declined "to show cause why this court should not release petitioner on the basis that the evidence before the IJ was insufficient as a matter of law to conclude that petitioner is a flight risk." Nov. 20, 2026 Endorsed Order. Instead, respondents assert that "because Petitioner has not challenged the bond hearing's adequacy, any inquiry into that issue is premature at this time." Doc. no. 12 at 1. Respondents maintain that the issue will not be ripe for review (and for their response) unless and until the petitioner challenges the adequacy of the bond hearing. The court disagrees.

"Federal courts adhere to the principle of party presentation." Margolin v. Nat'l Ass'n of Immigr. Judges, 608 U.S. 339, 342 (2026) (per curiam). "That principle—the 'rule that points not argued will not be considered'—distinguishes our adversarial system of justice from an inquisitorial one" and generally bars consideration of issues not raised by the parties. Id. (quoting United States v. Burke, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment)). Under the party presentation principle, courts may not grant habeas relief based on an argument that the petitioner has not raised and the parties have not briefed. Clark v. Sweeney, 607 U.S. 7, 9-10 (2025) (per curiam).

Still, "[t]he party presentation principle is supple, not ironclad." United States v. Sineneng-Smith, 590 U.S. 371, 376 (2020) (explaining that "modest

initiat[ion]" by a court may be appropriate). "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991).

The party presentation principle does not bar review in these circumstances. Panjaitan's habeas petition requests that the court "enter a ruling that petitioner is entitled to a bond hearing, and order such a hearing take place." Doc. no. 2 at 4. The petition cites the First Circuit's opinion in Hernandez-Lara. And, as the First Circuit held in Hernandez-Lara, the law entitles a person to not just any bond hearing—but a constitutionally adequate one. 10 F.4th at 41. Against the backdrop of that binding opinion, the court's November 20, 2026 order directed respondents to address whether the evidence supporting the IJ's bond determination was insufficient as a matter of law. See Sineneng-Smith, 590 U.S. at 380 (party presentation principle not violated where the court gives the parties an opportunity to address the issue with further briefing); see also Margolin, 608 U.S. at 343 (court "drastic[ally] depart[ed] from the principle of presentation" and thus committed an abuse of discretion by deciding a case on an unraised issue "without giving either side a chance to address [the court's] theory"). Accordingly, the court is satisfied that—far from "sally[ing] forth . . . looking for wrongs to right"—it is resolving an issue squarely before it that respondents were given the opportunity to address. See Sineneng-Smith, 590 U.S. at 376 (quotation omitted).

## II. The Evidence Before the IJ was Insufficient as a Matter of Law to Conclude that Panjaitan is a Flight Risk[3]

A noncitizen who is "in the country" may be detained during the pendency of removal proceedings pursuant to 8 U.S.C. § 1226. Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Unless ineligible for release under 8 U.S.C. § 1226(c), the Department of Homeland Security (DHS) has the authority to release noncitizens facing removal proceedings on "bond of at least $1,500" or "conditional parole." 8 U.S.C. § 1226(a)(2); see id. § 1226(c) (requiring detention for noncitizens that have committed specified criminal offenses). Alternatively, DHS may elect to detain the noncitizen pending the outcome of removal proceedings. Id. § 1226(a).

"An [ICE] officer makes the initial detention determination for noncitizens subject to detention under section 1226(a)." Hernandez-Lara, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226's implementing regulations provide that, if the noncitizen disagrees with the officer's detention decision, he may appeal that decision to an IJ, who may then "exercise the authority" in § 1226(a) to detain or release the noncitizen "and determine the amount of bond, if any, under which the [noncitizen] may be released." 8 C.F.R. § 236.1(d)(1). "Section 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden."

---

[3] Respondents have not argued that 8 U.S.C. § 1226(e) deprives this court of jurisdiction to adjudicate the IJ's discretionary bond denial. Even if they had, "as this court has repeatedly held, § 1226(e) does not deprive courts of 'jurisdiction to review an [IJ's] discretionary bond denial . . . where that bond denial is challenged as legally erroneous or unconstitutional.'" Timbigamba v. FCI Berlin, Warden, 836 F. Supp. 3d 430, 442 n.7 (D.N.H. 2026) (quoting Mayancela Mayancela v. FCI Berlin, Warden, Civ. No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025) (brackets omitted))

Hernandez-Lara, 10 F.4th at 26. In Hernandez-Lara, the First Circuit held that, to detain a noncitizen under § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove by a preponderance of the evidence that [the noncitizen] poses a flight risk." Id. at 41. Panjaitan's petition requests habeas relief pursuant to Hernandez-Lara.

Habeas relief is appropriate when a person detained following a bond hearing pursuant to 8 U.S.C. § 1226(a) "show[s] that the IJ 'failed to place the burden of proof on the Government' to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence." Mayancela, 2025 WL 3215638, at *5 (quoting Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019)). "To make this showing, he can either point to the language of the [IJ's] opinion or demonstrate that 'the evidence itself could not – as a matter of law – have supported' the [IJ's] decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019); accord, e.g., Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020); Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020); Rubio-Suarez v. Hodgson, Civ. No. 20-10491-PBS, 2020 WL 1905326, at *2-3 (D. Mass. Apr. 17, 2020). The court turns now to whether the flight-risk evidence was sufficient.

"[T]he preponderance standard is not toothless." United States v. Stimpson, 113 F.4th 350, 355 (3d Cir. 2024) (quoting United States v. Roman, 121 F.3d 136,

141 (3d Cir. 1997)). The party who bears the burden must "present[ ] reliable and specific evidence." Id.; see also In re Guerra, 24 I. & N. Dec. 37, 40-41 (BIA 2006), abrogated in part on other grounds by Hernandez Lara, 10 F.4th at 41 (holding that an IJ's bond decision must be based upon evidence in the record that is "probative and specific"). "In the civil immigration context, the government's burden of demonstrating flight risk is no less weighty than its burden of demonstrating that a criminal defendant should be detained pretrial on the basis of flight risk." Timbigamba v. FCI Berlin, Warden, 836 F. Supp. 3d 430, 446 (D.N.H. 2026) (citing Hernandez-Lara, 10 F.4th at 40).

The IJ's oral order credited Panjaitan's fixed address and length of residence in New Hampshire along with his familial and community ties as factors weighing against the denial of bond on flight-risk grounds. The IJ nevertheless found that Panjaitan's release posed an unacceptable risk of flight for two reasons: (1) his alleged conduct underlying the DUI charge; and (2) his disregard for the immigration laws and the unlikely prospect of him obtaining relief from removal. Neither justification, alone nor in combination, was sufficient for a reasonable IJ to deny bond on the basis of flight risk.

With respect to the DUI charge, the IJ reasoned that Panjaitan's actions and alleged disregard for the criminal laws rendered him a significant public safety concern. But the IJ did not explain why that rendered Panjaitan such a substantial risk of flight that no amount of bond or conditions of release could ameliorate. Panjaitan was cooperative, compliant, and made no effort to flee or resist arrest

when the officer pulled him over for the alleged DUI (or when ICE detained him). Julsaint v. Strafford Cnty. Dep't of Corr., Superintendent, No. 26-CV-761-LM-AJ, 2026 WL 3168090, at *3 (D.N.H. Oct. 22, 2026). Panjaitan was released on that charge under his own recognizance, and he appeared for his court date. See Mayancela, 2025 WL 3215638, at *6. Moreover, Panjaitan has not been convicted of any offense. Julsaint, 2026 WL 3168090, at *4; see also In re Andrade, 19 I. & N. Dec. 488, 490-91 (BIA 1987) ("extensive and recent criminal record" will generally "militat[e] against . . . release without a significant bond").

The IJ also based his flight risk finding on the fact that Panjaitan has violated the immigration laws, and that his prospect of obtaining relief from removal is speculative. "While BIA precedent permits IJs to consider the likelihood of obtaining relief from removal in assessing a noncitizen's risk of absconding from future proceedings, an IJ considering a petitioner's likelihood of obtaining relief cannot base his conclusion on legally erroneous grounds." Julsaint, 2026 WL 3168090, at *4. But the IJ did not elaborate on this basis, either in his oral or written order denying bond. Such sparse reasoning does not entitle the IJ's flight-risk determination to deference. Julsaint, 2026 WL 3168090, at *4. Though the court is mindful of the standard of review, absent sufficient explanation by the IJ, the court cannot determine if the IJ's bond decision rests on legally erroneous grounds. Id.

For the foregoing reasons, the court concludes that the evidence before the IJ was insufficient as a matter of law to conclude by a preponderance of the evidence

that Panjaitan's release poses a risk of flight so substantial that it cannot be ameliorated by any amount of bond or conditions of release. Because the IJ denied bond despite this failure of proof, the bond hearing was not constitutionally adequate under Hernandez-Lara. 10 F.4th at 41; see also Mayancela, 2025 WL 3215638, at *4-5.

The court turns finally to remedy. This court has previously ordered immediate release in materially identical circumstances. See Timbigamba, 836 F. Supp. 3d at 448-449; see also Julsaint, 2026 WL 3168090, at *5. As respondents have offered no persuasive justification as to why the court should depart from its' reasoning in Timbigamba, the court concludes that an order directing Panjaitan's immediate release under reasonable conditions of supervision is the appropriate measure to enforce its order granting the habeas petition as well as Panjaitan's constitutional rights.

**CONCLUSION**

Panjaitan's petition (doc. no. 2) is granted to the extent that respondents are ORDERED to release Panjaitan under reasonable conditions of supervision within twenty-four hours. Respondents shall file a status report confirming their compliance with this order within twenty-four hours of Panjaitan's release.

SO ORDERED.



Landya McCafferty
United States District Judge

November 25, 2026
cc: Counsel of Record.